**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

AMERICAN MULTI-CINEMA, INC.,

Plaintiff,

v.

GEORGE V. KANAGIN,
*94 Railroad Street*
*Gilberts, IL 60136*

PHOENIX & ASSOCIATES, INC.,
*Serve:*
*Robert Tardella*
*11 S. 2nd Avenue, Suite 6*
*Saint Charles, IL 60174*

LAND OF LINCOLN CONSERVATION, INC.,
*Serve:*
*George V. Kanagin,*
*94 Railroad Street*
*Gilberts, IL 60136*

Defendants.

Case No. __________

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW Plaintiff American Multi-Cinema, Inc., by and through its counsel, and for its cause of action against Defendants, hereby alleges as follows:

### Parties, Venue, and Jurisdiction

1. Plaintiff American Multi-Cinema, Inc. is a Missouri corporation.

2. AMC Realty, Inc. was a Delaware corporation that was merged into American Multi-Cinema, Inc. on April 2, 2009. Accordingly, American Multi-Cinema, Inc. and AMC Realty, Inc. are collectively referred to as "AMC".

3. Defendant George V. Kanagin ("Kanagin") is an Illinois citizen, and may be served with process at 94 Railroad Street, Gilberts, Illinois 60136.

4. Defendant Phoenix & Associates, Inc. ("Phoenix") is an Illinois corporation located at 94 Railroad Street, Gilberts, Illinois 60136. Phoenix may be served with process at the address set forth in the caption above.

5. Defendant Land of Lincoln Conservation, Inc. ("Land of Lincoln") is an Illinois corporation located at 94 Railroad Street, Gilberts, Illinois 60136. Land of Lincoln may be served with process at the address set forth in the caption above.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7. This Court has personal jurisdictional over Defendants because Kanagin, individually and as an agent for and representative of Phoenix and Land of Lincoln, (a) travelled to Missouri to negotiate contracts with AMC, (b) made representations that fraudulently induced AMC to enter into contracts in Missouri, (c) transacted business in Missouri, (d) entered into contracts in Missouri, and (e) committed tortious acts in Missouri and elsewhere that caused injury to a Missouri corporation and citizen.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this cause of action occurred in this district.

## General Allegations

9. On December 16, 1996, AMC purchased approximately 93.5 acres of real property in South Barrington, Cook County, Illinois located at the northwest intersection of I-90 and Barrington Road, and legally described at the time of purchase as follows:

> Lots 1, 2, 3 and Outlots A, B, C, D and E in the Midlands at South Barrington, being a subdivision in the southeast quarter of Section 35, Township 42 North, Range 9 East of the Third Principal Meridian in Cook County, Illinois pursuant to a plat of subdivision recorded as Torrens Document No. 3982231 and recorded in the office of the Cook County Recorder of Deeds as Document No. 91369138 (the "Property").

10. When AMC purchased the Property, portions of the Property were designated as "wetland areas" (the "Wetland Property") and were subject to U.S. Army Corps of Engineers

11. permit number 7388803 (the "Permit").

12. Wetland areas are defined as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas." *See* 33 C.F.R. 328.3(b).

13. In addition, in order to develop property in South Barrington, Illinois, one must satisfy the Village of South Barrington, the Metropolitan Water Reclamation District ("MWRD"), and the Illinois EPA that sufficient provisions exist for utilities and the management of storm water runoff, including appropriate provisions for detention of same, which, in the case of AMC, required construction and maintenance of detention facilities ("Detention") on the Property. *See, e.g.*, South Barrington, Illinois Village Code 12-4-1 *et seq*.

14. AMC had limited expertise with wetlands, wetland mitigation, and compliance with U.S. Army Corps of Engineers permits. Further, AMC needed assistance in meeting the requirements for and managing storm water runoff in the Village of South Barrington, including, as noted above, construction and maintenance of Detention.

15. Shortly after it purchased the Property, AMC searched for a contractor and consultant to address and handle issues related to the development and construction of the

Property, including land use, environmental, engineering, permitting, and water and other utility issues.

16. Kanagin advised AMC that Defendants could provide the necessary services and that they would do so for the benefit of AMC, and, further, that they were experts in the areas of engineering, environmental, land use, and management and monitoring services with respect to AMC's property, including management of wetlands, storm water runoff and sanitary sewage, serving as stewards for the Wetland Property and assisting with permitting and compliance with the Department of the Army, the Illinois EPA, the MWRD, and the Village of South Barrington, all as may be needed for AMC's proposed development of the Property.

17. Unbeknownst to AMC, Defendants' representations were false when made. In particular, while Defendants did have some expertise in these areas and did provide some assistance to AMC, Defendants did not intend to use their expertise to benefit AMC. Instead, Defendants intended to exploit their relationship with AMC in a manner which would permit Defendants to steal from and/or extort money or property from AMC.

18. Defendants' misrepresentations induced AMC to enter into a series of contracts whereby Defendants agreed to use their expertise to provide engineering, environmental, land use, and management and monitoring services with respect to AMC's property, including management of wetlands, storm water runoff and sanitary sewage, further including serving as stewards for the Wetland Property and assisting with permitting and compliance with the Department of the Army, the Illinois EPA, the MWRD, and the Village of South Barrington, all as may be needed for AMC's proposed development of the Property.

19. Due to the unique nature of the parties' relationship, Defendants owed AMC fiduciary duties to act in AMC's best interests with respect to those services set forth in

Paragraph 17, above, and AMC justifiably relied upon Defendants to use their claimed expertise to act in the best interests of AMC and to serve as a steward for AMC's Wetland Property.

20. At the time the parties entered into their contractual and fiduciary relationships, Defendants had no intention of living up to their representations that they would use their expertise for the benefit of AMC. Instead, as noted above, Defendants intended to utilize their position as fiduciaries and parties to contracts to steal from or extort money and property from AMC.

21. Defendants' fraudulent intent is evidenced by, *inter alia*, the fact that, unbeknownst to AMC, Defendants forged and executed quit claim deeds on October 24, 1997, which purported to transfer to Kanagin ownership of and interests in portions of the Property which included, but were not limited to, the Wetland Property, Detention, and utilities benefiting the Property.

22. Defendants took unfair advantage of their contractual and fiduciary relationship with AMC when they created forged quit claim deeds by (a) creating reasonable facsimiles of the signatures of Charles Stilley and Ellen Zellmer by tracing or copying their actual signatures that appeared on other contract documents that had been created as a part of the parties' contractual and fiduciary relationship, and/or (b) simply cutting and pasting signatures of Mr. Stilley and Ms. Zellmer that appeared on other contract documents that had been created as part of the parties' contractual and fiduciary relationship.

23. On March 19, 2014, Kanagin recorded the forged quit claim deeds in the Cook County, Illinois Recorder of Deeds office. On their face, the quit claim deeds purport to transfer to Kanagin ownership of and interests in portions of the Property which included, but were not

limited to, the Wetland Property and Detention, as well the utilities benefiting the Property. (Copies of the quit claim deeds are attached hereto as **Exhibit 1** and **Exhibit 2**).

24. Upon learning of the existence of the recorded quit claim deeds, AMC confirmed that the signatures of Charles Stilley and Ellen Zellmer were forgeries, and that Ms. Zellmer had not notarized the purported signature of Mr. Stilley or the signature of Mr. Kanagin that appear on the quit claim deeds.

25. On or about June 6, 2014, Kanagin, individually and as agent for Phoenix and Land of Lincoln, attempted to extort $800,000.00 from AMC by claiming that he owned all of the property and interests described in the quit claim deeds, including detention rights associated with such property.

26. The fair market value of the portions of the Property and the rights and interests purportedly conveyed to Kanagin by the quit claim deeds exceeds $75,000.00.

27. Defendants' conduct in forging the signature of AMC Realty Inc.'s president on the quit claim deeds, forging the notarization of that signature, fraudulently inducing AMC to enter into numerous agreements with Defendants and to pay Defendants several million dollars, and recording the forged quit claim deeds was intentional, malicious, amounted to an entire want of care toward AMC's rights and interests, and constituted a conscious indifference to the rights of AMC. AMC, therefore, is entitled to punitive damages.

28. AMC has satisfied all conditions precedent to bringing this action.

**Count I -- Breach of Contract**
**(All Defendants)**

29. AMC realleges paragraphs 1 – 27 above as if fully set forth herein.

30. AMC and Defendants entered into various contracts whereby Defendants agreed to use their expertise to benefit AMC by providing services related to the development and

construction of the Property, including land use, environmental, engineering, permitting, and water and other utility issues.

31. AMC has performed under, and has satisfied all conditions precedent to, the parties' contracts.

32. Defendants materially breached their contracts with AMC.

33. As a result of Defendants' breaches of contract, AMC has suffered and continues to a suffer damages in excess of $75,000.00.

WHEREFORE, AMC prays for judgment, jointly and severally, against Defendants in excess of $75,000.00, attorneys' fees and expenses, and for such further relief as the Court deems just and proper.

**Count II -- Fraud**
**(All Defendants)**

34. AMC realleges paragraphs 1 – 32 above as if fully set forth herein.

35. As set forth in more detail above, Defendants fraudulently induced AMC to enter into a series of contracts related to the Property by assuring AMC that Defendants (a) were experts in the areas set forth in Paragraph 15 above, and (b) would use their expertise to benefit AMC in the development of the Property.

36. Defendants intentionally failed to disclose the fact that they had created and executed quit claim deeds for the purpose of taking portions of the Property and related rights and interests from AMC without consideration, and failed to disclose they had no intention of using their expertise to benefit AMC.

37. Defendants' fraudulent intent is evidenced by, *inter alia*, the fact that Defendants forged and executed quit claim deeds on October 24, 1997, which purported to transfer fee

simple ownership of portions of the Property, including the Wetland Property, Detention, and utilities benefiting the Property from AMC to Kanagin.

38. As set forth in detail above, Defendants took unfair advantage of their relationship with AMC when they used the fruits of that relationship to create forged quit claim deeds designed to take AMC's property, rights, and interests.

39. But for Defendants' representations and inducements, AMC would not have entered into any of the contracts with Defendants.

40. AMC justifiably relied upon Defendants to disclose all material facts to it, particularly in light of the fiduciary duties Defendants owed AMC.

41. AMC has suffered and continues to suffer damages as a result of Defendants' fraudulent acts and omissions.

42. Defendants' fraudulent conduct, misrepresentations, and intentional concealment of material facts were outrageous and done intentionally and/or with a reckless indifference to the rights of AMC, such that the imposition of punitive damages is warranted.

WHEREFORE, AMC prays for judgment, jointly and severally, against Defendants (a) enjoining Defendants from selling, transferring, encumbering, or wasting any portion of the Property, (b) enjoining Defendants from further publishing or uttering the forged quit claim deeds, and (c) awarding compensatory damages in excess of $75,000.00, attorneys' fees, expenses, and punitive damages, and for such further relief as the Court deems just and proper.

**Count III -- Conspiracy to Commit Fraud**
**(All Defendants)**

43. AMC realleges paragraphs 1 – 41 above as if fully set forth herein.

44. Defendants, after a meeting of the minds, engaged in a conspiracy to defraud AMC.

45. Defendants knew that they had created and executed quit claim deeds for the purpose of taking portions of the Property and related rights and interests from AMC without consideration, and that they had no intention of using their expertise to benefit AMC.

46. In furtherance of the conspiracy, each Defendant made representations to AMC and entered into contracts with AMC that were inconsistent with Defendants' knowledge and were made with the intent to defraud AMC.

47. In furtherance of the conspiracy, all Defendants failed to disclose material facts to AMC, as alleged more fully herein.

48. All Defendants had a pecuniary interest in (a) the creation of a contractual and fiduciary relationship with AMC, (b) concealing the fact that they had created and executed the forged quit claim deeds, and (c) concealing that they had no intention of using their expertise to benefit AMC.

49. AMC justifiably relied upon each of the Defendants to communicate the material facts to them.

50. AMC sustained damages in excess of $75,000.00 as a result of Defendants' conspiracy to commit fraud.

51. Defendants' fraudulent conduct, misrepresentations, and intentional concealment of material facts were outrageous and done intentionally and/or with a reckless indifference to the rights of AMC, such that the imposition of punitive damages is warranted.

WHEREFORE, AMC prays for judgment, jointly and severally, against Defendants (a) enjoining Defendants from selling, transferring, encumbering, or wasting any portion of the Property, (b) enjoining Defendants from further publishing or uttering the forged quit claim

deeds, and (c) awarding compensatory damages in excess of $75,000.00, attorneys' fees, expenses, and punitive damages, and for such further relief as the Court deems just and proper.

**Count IV**
**Breach of Fiduciary Duty**
**(All Defendants)**

52. AMC realleges paragraphs 1 – 50 above as if fully set forth herein.

53. As set forth in detail above, Defendants owed AMC fiduciary duties.

54. As set forth in detail above, Defendants breached their fiduciary duties to AMC by, *inter alia*, forging and recording quit claim deeds that transferred to Defendants AMC's ownership of the portions of the Property which Defendants were duty-bound to protect, preserve, and improve for AMC's benefit, not their own.

55. As a result of Defendants' breach of their fiduciary duties, AMC has sustained and continues to sustain damages in excess of $75,000.00.

56. Defendants' conduct in forging the quit claim deeds, fraudulently inducing AMC to enter into numerous agreements with Defendants and to pay Defendants several million dollars, and recording the forged quit claim deeds was intentional, malicious, amounted to an entire want of care toward AMC's rights and interests, and constituted a conscious indifference to the rights of AMC. AMC, therefore, is entitled to punitive damages.

WHEREFORE, AMC prays for judgment, jointly and severally, against Defendants (a) enjoining Defendants from selling, transferring, encumbering, or wasting any portion of the Property, (b) enjoining Defendants from further publishing or uttering the forged quit claim deeds, and (c) awarding compensatory damages in excess of $75,000.00, attorneys' fees, expenses, and punitive damages, and for such further relief as the Court deems just and proper.

**Count V**
**Slander of Title**
**(Kanagin)**

57. AMC realleges paragraphs 1 – 55 above as if fully set forth herein.

58. By recording the forged quit claim deeds, Kanagin intentionally, knowingly, and maliciously recorded, published, and uttered false documents that disparaged and were harmful to AMC's interests.

59. Kanagin had no legal justification or excuse for his intentional and malicious recording, publication, and utterance of these false documents.

60. Kanagin's recordation and publication of the forged quit claim deeds has caused and will continue to cause injury and pecuniary losses and damages to AMC.

WHEREFORE, AMC prays for judgment, jointly and severally, against Defendants (a) enjoining Defendants from selling, transferring, encumbering, or wasting any portion of the Property, (b) enjoining Defendants from further publishing or uttering the forged quit claim deeds, and (c) awarding compensatory damages in excess of $75,000.00, attorneys' fees, expenses, and punitive damages, and for such further relief as the Court deems just and proper.

**Count VI**
**Declaratory Judgment**
**(All Defendants)**

61. AMC realleges paragraphs 1 – 59 above as if fully set forth herein.

62. This claim is brought pursuant to and accordance with 28 U.S.C. §§ 2201-2202, seeking a declaration of the rights and other legal relations of the parties.

63. There exists an actual case or controversy between AMC and Defendants regarding both (a) the validity of the quit claim deeds attached hereto as Exhibits 1 and 2; and (b)

ownership of the property taken by means of the forged quit claim deeds recorded by Kanagin on March 19, 2014.

64. AMC seeks a declaration that Defendants have materially breached the contracts between AMC and Defendants, including the easement appointing Land of Lincoln as steward for the Wetland Property, and that such contracts are voidable by AMC.

65. AMC seeks to have the Court declare the rights and other legal relations of the parties concerning the Property.

66. The requested declaratory judgment would effectively settle the instant controversy between the parties, and would serve the useful purpose of clarifying the rights of and legal relations between the parties.

WHEREFORE, AMC respectfully prays that the Court enter judgment against Defendants, providing the following relief:

a. declaring that the quit claim deeds recorded on March 19, 2014 are forged and void;

b. enjoining Defendants from selling, transferring, encumbering, or wasting any portion of the Property or rights related thereto;

c. enjoining Defendants from further publishing or uttering the forged quit claim deeds;

d. declaring that the Property is subject to no right, title, claim, lien, or interest of Defendants herein;

e. declaring that whatever right, title, or interest that any of the Defendants has in any portion of the Property or the utilities or rights associated therewith is extinguished;

f. declaring that Defendants' acts and omissions constitute material breaches of each of the parties' contracts and constitute breaches of the fiduciary duties owed by Defendants to AMC; and

g. declaring that Defendants are in breach of any and all contracts and agreements between AMC and any Defendant that relate to the Property, Wetland Property, or Detention, and that all such contracts are voidable by AMC.

**DEMAND FOR JURY TRIAL**

AMC hereby demands a trial by jury on all of its claims against Defendants.

**DESIGNATION OF PLACE OF TRIAL**

AMC requests Kansas City, Missouri as the place of trial.

Respectfully submitted,

**LEWIS RICE LLC**

By: /s/ Thomas R. Larson

Thomas R. Larson, #26114
Scott A. Wissel, #49085
1010 Walnut Street, Suite 500
Kansas City, Missouri 64106
TEL: (816) 421-2500
FAX: (816) 472-2500
trlarson@lewisricekc.com
sawissel@lewisricekc.com
ATTORNEYS FOR PLAINTIFF AMC